Carl Davis, petitioner, was convicted of arson, second degree, in violation of Code of Alabama 1975, § 13A-7-42, and was sentenced to ten years in the state penitentiary. The Court of Criminal Appeals affirmed. 531 So.2d 65. We issued the writ of certiorari to review the following issues:
 A) Did the trial court err in not granting Davis's motion for directed verdict of acquittal after the close of the state's case because of the circumstantial nature of the state's evidence?
 B) Did the trial court err in not granting Davis's motion for a mistrial based on two juror's changed votes during the polling of the jury after the verdict had been rendered?
The facts of this case are summarized as follows:
The Rock Store, located in the Good Hope area in Cullman County, was burned sometime between midnight and 1:00 a.m. on July 20, 1986. The Rock Store was owned by Bob Waddell and Steven Hanson, and was leased to Randy Quattlebaum.
At trial, Hanson testified that he had had some difficulties with Davis on several occasions, including Davis's indecently exposing himself to patrons of the store. Hanson had filed a complaint against Davis that resulted in the commitment of Davis to the Veterans' Administration Hospital in Tuscaloosa, Alabama. Hanson also testified that he had seen Davis two weeks before the fire.
Gina Johnson, a cashier at Jack's Truck Stop, located within one-half mile of the Rock Store, testified that she saw Davis buy a gallon of diesel fuel from Jack's Truck Stop and that he had the fuel in a clear plastic milk jug. Johnson described Davis as staggering and smelling of alcohol, and stated that Davis explained that a friend had run out of fuel. Johnson informed officers of the sheriff's department of Davis's behavior after she had heard that the Rock Store had burned.
At approximately 1:15 a.m., on July 20, 1986, the fire was detected and reported to the sheriff's department and the fire department. Upon their arrival, officers of the sheriff's department began searching for witnesses to the fire. About an hour after the search began, Davis's car was found in a ditch located 275 yards from the Rock Store. Davis was found about 30 yards from the car, lying on his back unconscious. Officer Don Smith roused Davis, noting his obviously drunken condition, and arrested him at approximately 4:00 a.m. on the same day for public intoxication.
Later in the day, Ed Lee, a criminal investigator for the Cullman area, began his investigation of the fire. He testified that when he arrived at the scene the fire was out but the store was still smoldering. He found some paper and rags stacked approximately one foot high at the front of the store, which he determined was where the fire began. He also found a burn pattern that indicated to him that an accelerant such as diesel fuel or gasoline had been used to start the fire. He stated that the rags and papers smelled of diesel fuel. Lee also found a melted plastic milk jug. Lee mailed the jug to the Department of Forensic Sciences at Huntsville, Alabama, where laboratory analyst Orezean Otey tested the jug and determined that it contained both diesel fuel and gasoline.
During the trial, after the state had presented its case, Davis moved for a directed verdict, which was denied, and rested his case without presenting any evidence. After closing arguments and jury instructions, the jury retired to consider its verdict. The jury found Davis guilty of arson in the second degree. Davis requested a poll of the jury, wherein this colloquy occurred:
 "THE COURT: So I will ask if this is, in fact, your verdict, Mr. Foreman?
"A JUROR: No.
 "THE COURT: All right. I guess we need nothing further then.
 "Is this verdict not a unanimous verdict, Mr. Foreman?
"MR. FOREMAN: It was. *Page 1043 
"A JUROR: But with some argument.
 "THE COURT: Are you telling me that this is not your verdict?
 "A JUROR: I did submit that and I know that I shouldn't have, but I have qualms. Not with the verdict.
 "THE COURT: Well, that is the question that I am asking you; is this your verdict?
 "A JUROR: I am sorry, not with the verdict, but with the degree.
"THE COURT: With what?
"A JUROR: The degree.
 "THE COURT: If you have problems with the degree then you have problems with the verdict. The jury has returned a verdict finding the defendant guilty of arson, 2nd degree, that is charged in the indictment. You disagree with that? Did you not intend to vote for that verdict?
 "A JUROR: No, I did at the end. But I just have qualms. I am sorry. I personally prefer the third degree.
"THE COURT: Do you want to —
"A JUROR: Revote?
"THE COURT: Yes. Is that what you want to do?
"A JUROR: Yes.
"THE COURT: What says the defendant?
 "MR. HARDEMAN: Your Honor, at this time, I believe, that we would move for a mistrial.
 "THE COURT: All right. I will take that under advisement.
"If you would, go back to the jury room please.
(Jury not present.)
 [Apparently some discussion between the court and counsel occurred at this point.]
"THE COURT: Bring them back in.
(Jury present at 4:55 p.m.)
 "THE COURT: Okay. Let's see, you are in the same, you are in different positions than you were, I think. I had started down the row with the foreman and you had stated this was your verdict; is this correct?
"MR. FOREMAN: Yes, sir.
". . . .
"THE COURT: Mrs. Kugler.
"A JUROR: Kugler.
 "THE COURT: You stated, I am not sure exactly what you stated. But you told me that you voted for the verdict, but you were having —
 "JUROR KUGLER: Yes, I shouldn't have. I submitted and I wasn't altogether clear in [conscience] of doing it.
"THE COURT: But you did vote?
"JUROR KUGLER: Yeah, I did.
"THE COURT: That was your verdict at the time?
"JUROR KUGLER: Yeah.
"THE COURT: You voted for it?
"JUROR KUGLER: Yeah.
"THE COURT: All right. On the back row.
"THE COURT: Next.
"A JUROR: No.
"THE COURT: Did you not vote for that verdict?
 "A JUROR: I voted for it, but I am like her. I think it is done too suddenly and too fast.
"THE COURT: But you did vote for it?
"A JUROR: Right.
"THE COURT: And your name?
"A JUROR: Phyllis Tomlin.
"THE COURT: Yes, ma'am. Okay.
"A JUROR: Yes.
"A JUROR: Yes.
"A JUROR: Yes.
 "THE COURT: Okay. The verdict, that is the verdict.
"What says the defendant this time?
 "MR. HARDEMAN: Your Honor, we are going to renew our motion for mistrial at this point.
"THE COURT: Okay. Motion denied.
". . . .
 "THE COURT: Ladies and gentlemen, I thank you, very much for your verdict. "You are discharged as a jury in this case.
(Jury discharged at 5:00 p.m.)
 "THE COURT: Okay. Mr. Davis, based on the verdict that the jury just returned . . . which you heard, the Court does now *Page 1044 
adjudge you guilty of the offense charged in the indictment."
Davis was sentenced to 10 years in the penitentiary and was ordered to pay restitution in the amount of $26,520.
 A
Davis first argues that the Court of Criminal Appeals erred in affirming the trial court's denial of his motion for a directed verdict because, he argues, his conviction was based on circumstantial evidence and a conviction on circumstantial evidence is justified only when every other reasonable hypothesis except the guilt of the defendant is excluded. He cites Jones v. State, 481 So.2d 1183 (Ala.Crim.App. 1985), and Ex parte Mauricio, 523 So.2d 87 (Ala. 1987).
Davis was convicted of violating § 13A-7-42, which in 1986 read as follows:
"§ 13A-7-42. Arson in the second degree.
 "(a) A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion.
 "(b) A person does not commit a crime under this section if:
 "(1) No person other than himself has a possessory or proprietary interest in the building damaged; or if other persons have those interests, all of them consented to his conduct; and
 "(2) His sole intent was to destroy or damage the building for a lawful and proper purpose.
 "(c) The burden of injecting the issue of justification in subsection (b) is on the defendant, but this does not shift the burden of proof.
 "(d) Arson in the second degree is a Class B felony."[1]
An arson conviction requires the state to prove thecorpus delicti of the offense, which, as we reiterated in Exparte Locke, 527 So.2d 1347 (Ala. 1988), consists of the following:
A) Proof that a building was burned;
 B) Proof that the building was wilfully burned by some responsible person.
The guilt of the defendant may be proved by circumstantial evidence as well as by direct evidence. Ex parte Locke, supra, at 1348. We stated in Locke that circumstantial evidence is sufficient when it is so strong and cogent as to indicate the guilt of the defendant to a moral certainty. That evidence should also exclude any inference consistent with the defendant's innocence. A review of the record in this case reveals that the state proved the corpus delicti in this case, by showing that the Rock Store was burned and was burned by the petitioner, Carl Davis. Davis was implicated through circumstantial evidence, which we find sufficiently persuasive to support a conviction of second degree arson. We find the following facts in the record of particular importance in the state's case: *Page 1045 
 A) Davis had prior difficulties with Steve Hanson, one of the owners of the Rock Store.
 B) Davis had been seen within a half mile of the Rock Store less than an hour before the fire was noticed.
 C) Davis bought a gallon of diesel fuel shortly before the fire occurred.
 D) The diesel fuel was placed in a clear plastic milk jug. A clear plastic milk jug was found at the scene of the fire.
 E) The fire was determined to be the product of an accelerant such as gasoline or diesel fuel.
 F) The plastic jug, after an analysis by the forensics laboratory, was found to have contained diesel fuel and gasoline.
 G) Davis and his car were found about 1/5 mile from the Rock Store within one hour after the fire was noticed.
Given these facts, we are of the opinion that this evidence indicates Davis's guilt to a moral certainty and that any inference that would indicate his innocence has been eliminated. Therefore, the denial of the defendant's motion for directed verdict was not error.
 B
Davis argues that the trial court erred in denying his motion for a mistrial after the jury was polled and after two jurors expressed reservations concerning the verdict. We have held inComer v. Rush, 403 So.2d 205 (Ala. 1981), that after a §12-16-15, Code 1975, poll of a jury that reveals a juror or jurors who express misgivings with their verdict, the party moving for mistrial bears the burden of first moving for further deliberations before a mistrial motion can be considered. In the instant case, the record reveals that Davis did not make a request for further deliberations, which we held in Comer, supra, was a prerequisite to a mistrial motion. See also § 12-16-15. We, therefore, hold that the Court of Criminal Appeals did not err in affirming the conviction.
For the foregoing reasons, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES and KENNEDY, JJ., dissent.
[1] § 13A-7-42 has been modified by the state legislature since 1986, when Davis was convicted. It now reads as follows:
"13A-7-42. Arson in the second degree.
 "(a) A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion.
 "(b) A person does not commit a crime under subsection (a) if:
 "(1) No person other than himself has a possessory or proprietary interest in the building damaged; or if other persons have those interests, all of them consented to his conduct; and
 "(2) His sole intent was to destroy or damage the building for a lawful and proper purpose.
 "(c) The burden of injecting the issue of justification in subsection (b) is on the defendant, but this does not shift the burden of proof.
 "(d) A person commits the crime of arson in the second degree if he intentionally starts or maintains a fire or causes an explosion which damages property in a detention facility or a penal facility, as defined in section 13A-10-30
of this Code, with reckless disregard (because of the nature or extent of the damage caused or which would have been caused but for the intervention of others) for the safety of others.
"(e) Arson in the second degree is a Class B felony."